The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. Upon reconsideration of the evidence, the Full Commission MODIFIES in part and AFFIRMS in part the Opinion and Award of Deputy Commissioner Holmes.
 ***********
The Full Commission finds as fact and concludes as matter of law the following which were entered by the parties at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. All parties are properly before the Industrial Commission, are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the Commission has jurisdiction over the parties and the subject matter.
2. On the date of the injury giving rise to this claim, an employment relationship existed between plaintiff and defendant-employer.
3. On the date of the injury giving rise to this claim, defendant-employer was a duly qualified self-insured for workers' compensation purposes.
4. Judicial notice is taken of all Industrial Commission forms and orders on file in this case.
5. On the date of the injury giving rise to this claim, plaintiff had an average weekly wage of $256.13, yielding a compensation rate of $171.22.
6. The issues before the Deputy Commissioner were (1) whether the job offered to plaintiff by defendant was suitable employment; (2) whether plaintiff is entitled to total and permanent disability benefits; and (3) whether plaintiff is entitled to attorneys' fees pursuant to N.C. Gen. Stat. § 97-88.1.
7. The issues appealed to the Full Commission are (1) the denial of total and permanent disability benefits; (2) the denial of attorneys' fees; and (3) the order that plaintiff comply with vocational rehabilitation.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commission with some modifications and finds as follows
 FINDINGS OF FACT
1. On 10 January 1996, plaintiff experienced an admittedly compensable injury by accident to her right shoulder. Defendant accepted liability for plaintiff's injury by virtue of an approved Form 21 Agreement. Pursuant to the agreement, benefits have been continuously paid to plaintiff since 1996.
2. On the date of the hearing before the Deputy Commissioner, plaintiff was fifty-two years old. Plaintiff has a high-school degree, but no special skills or licenses beyond that level. Her work experience consists of eighteen years sewing and five years hanging wallpaper, with varying lesser periods of secretarial and other office experience.
3. Prior to her admittedly compensable injury by accident of 10 January 1996, plaintiff had a pre-existing injury to her right shoulder that was the subject of a previous workers' compensation claim. She had two surgeries on this shoulder prior to the compensable injury. Plaintiff had no pre-existing history of any mental health, fibromyalgia, myofascial pain or chronic pain treatment.
4. Plaintiff went to work with defendant on 14 July 1995. Her job duties involved apparel sales and other store duties, including stocking shelves and arranging merchandise in displays.
5. On 10 January 1996, plaintiff was asked by her supervisor to move a clothing stand. She felt a sharp pain and strain in her right shoulder while moving the stand.
6. Defendant admitted compensability and entered into a Form 21 Agreement for payment of temporary total disability benefits for "undetermined" weeks. The Form 21 Agreement was dated 16 February 1996 and was approved by the Industrial Commission on 17 April 1996.
7. As a result of her admittedly compensable injury by accident to her right shoulder, plaintiff began treating with Dr. Robert Martin, Chief of Orthopaedics with Kaiser Permanente. Dr. Martin performed a third surgery on plaintiff's shoulder in April 1996. Dr. Kevin Speer, an orthopaedic surgeon at Duke University Sports Medicine Department, performed a fourth surgery on the same shoulder in September 1996. As a result of the compensable injury by accident, plaintiff has a forty percent permanent functional disability to her right arm.
8. Since her surgeries, plaintiff has suffered from chronic pain as a result of her admittedly compensable injury by accident. She has been treated by Drs. Urban and Spillane at the Duke University Pain Management Program and by Dr. Calloway, an orthopaedic surgeon in Raleigh. She has also undergone extensive treatment by neurologist Dr. Randolph J. Maier for her chronic pain, including physical therapy, prescription medications and multiple injections.
9. Plaintiff suffers frequent exacerbations in her chronic pain. Plaintiff's chronic pain causes her difficulty sleeping and engaging in normal activities of daily living. Most activity increases plaintiff's pain level. Her pain also causes difficulty maintaining attention and concentration. Driving significantly increases plaintiff's pain level, and she is unable to drive for more than approximately thirty minutes without taking breaks.
10. Plaintiff takes multiple medications for her chronic pain. Plaintiff's chronic pain, difficulty sleeping, multiple surgeries and ongoing medical care and treatment resulting from her admittedly compensable injury by accident have caused severe emotional and psychological problems. At the direction of Dr. Maier, plaintiff has undergone psychological evaluation and treatment by Dr. Robert L. Conder, a clinical neuropsychologist.
11. Defendant assigned Ms. Kimberly Knowles, a vocational consultant employed by Concentra Managed Care, in an effort to find employment suitable for plaintiff. At Ms. Knowles' direction, plaintiff underwent an extensive job search, including several interviews. No jobs were ever actually offered to plaintiff. On 24 May 1999, defendant filed a Form 24 seeking to terminate plaintiff's benefits for alleged failure to accept one of these jobs. This Form 24 was denied by Order of a Special Deputy Commissioner dated 28 July 1999.
12. In August 1999, defendant created a customer service position for plaintiff. The position was part-time from 6:00 9:30 p.m. and on weekends. The position did not include any lifting or gift-wrapping as was normally required of all other customer service positions and it had never been filled by an individual with a workers' compensation injury or claim. The job description for this position was specifically tailored for plaintiff. Defendant presented no evidence of any similar positions available with any other employers. Defendant presented no evidence that any employers other than defendant would have hired plaintiff for a similar position at comparable wages.
13. Although Dr. Maier approved this modified job description, he testified that the sole purpose in approving the job description was to try to increase plaintiff's level of activity and to take her mind off her pain.
14. The job position was approved only from a physical standpoint. Defendant never obtained approval of the job or work restrictions from a psychiatric or psychological standpoint.
15. Plaintiff's psychological symptoms were caused by her admittedly compensable injury by accident and resulting chronic pain. Plaintiff's chronic pain, myofascial pain syndrome, and fibromyalgia also were caused by her admittedly compensable injury by accident. Both Drs. Conder and Maier testified, and the Full Commission finds by the greater weight of the evidence, that plaintiff would benefit from additional treatment for these conditions.
16. Plaintiff has reached maximum medical improvement of her shoulder injury and her psychological condition. Dr. Conder testified, and the Commission finds, that at present plaintiff is totally disabled from any work due to her psychological conditions alone. Although Dr. Maier testified that plaintiff is totally and permanently disabled and currently unable to maintain any employment, including part time, on a steady basis, he also stated that plaintiff ought to be able to do some kind of work. Dr. Maier recommended further evaluation and treatment of plaintiff's fibromyalgia by a rheumatologist who could provide another opinion on the fibromyalgia diagnosis and whether there is some treatable illness that Dr. Maier may have overlooked. Both Drs. Maier and Conder also recommended evaluation by a psychiatrist, as well as ongoing psychological care, including pain management and biofeedback programs.
17. At this time, plaintiff is totally disabled to earn wages in any employment as a result of her compensable injury by accident.
18. There is no competent evidence of record that plaintiff would benefit from any vocational rehabilitation efforts.
19. Defendant's defense of plaintiff's claim was not the result of stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing stipulations and findings of fact the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Plaintiff experienced an admittedly compensable injury by accident arising out of and in the course of her employment with defendant on 10 January 1996. By virtue of the approved Form 21 Agreement, plaintiff is entitled to an ongoing presumption of total disability until such time as plaintiff returns to work or until the Commission finds defendant has successfully rebutted this presumption of disability. Franklin v.Broyhill Furniture Industries, 123 N.C. App. 200, 472 S.E.2d 382 (1996). Therefore, plaintiff is entitled to continue to receive total disability compensation at the rate of $171.22 per week until further order of the Commission. N.C. Gen. Stat. § 97-2(6).
2. The job created by the defendant and offered to plaintiff does not constitute suitable employment. Plaintiff justifiably refused the job offer. Defendant is not entitled to terminate plaintiff's compensation. N.C. Gen. Stat. § 97-32.
3. As a result of plaintiff's admittedly compensable injury by accident, plaintiff is entitled to have defendant pay for further medical treatment for so long as said treatment effects a cure, gives relief or tends to lessen plaintiff's period of disability. N.C. Gen. Stat. §97-25. The approved medical treatment includes evaluation and treatment by a rheumatologist and psychiatrist, as well as ongoing psychological care, as needed.
4. Plaintiff is not required to submit to vocational rehabilitation, since there is no medical evidence plaintiff is able to work or that vocational rehabilitation would be helpful.
5. Defendant's defense of plaintiff's claim was reasonable and, therefore, plaintiff is not entitled to an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendant shall continue to pay plaintiff total disability compensation in the amount of $171.22 per week until further Order of the Commission.
2. Defendant shall provide for all reasonable and necessary medical treatment related to plaintiff's compensable injury by accident, to the extent such treatment tends to affect a cure, give relief, or lessen the period of plaintiff's disability. The approved medical expenses include treatment recommended by Drs. Maier and Condor, including but not limited to a psychiatrist and rheumatologist.
3. Defendant shall not require plaintiff to submit to vocational rehabilitation.
4. The issue of whether plaintiff is permanently and totally disabled is RESERVED for decision pending further evaluations and treatment by a psychiatrist and rheumatologist. The Full Commission retains jurisdiction over this matter.
5. IT IS HEREBY ORDERED that this case is referred to the Commission's Nurses Section for assignment of a nurse to assist the parties in selection of a psychiatrist and rheumatologist and for supervision of any further evaluation and medical treatment.
6. Defendant shall bear the costs of this proceeding.
This the ___ day of July, 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/mhb